UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**BUNGORNLUCK RODDA,**

    Plaintiff,

vs.                                            **CASE NO.**

**UNIVERSITY OF MIAMI,**

    Defendant.

_____/

## **COMPLAINT**

Plaintiff, **BUNGORNLUCK RODDA** ("Plaintiff"), by and through the undersigned counsel and pursuant to Title I of the American Disabilities Act, 42 U.S.C. §12112, *et seq.*, (1990) (ADA), as amended by the Americans with Disabilities Amendments Act (ADAA), Rehabilitation Act of 1973, 29 U.S.C. §504, (1988), the Family and Medical Leave Act of 1993, §2601 *et seq.* ("FMLA"), and Title VII of the 1964 Civil Rights Act, 78 Stat. 253, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and 29 US Code of the Age in Employment Discrimination Act, **(ADEA)**, hereby sues the Defendant, **UNIVERSITY OF MIAMI** ("Defendant") and as grounds states the following:

1. Plaintiff **BUNGORNLUCK RODDA** was at all times material an employee of Defendant. On November 13, 2017, Defendant unlawfully retaliated against and terminated Plaintiff from her position as administrative assistant Defendant's unlawful discriminatory employment practices on the basis of Plaintiff's disability, to wit: respiratory illness (asthma), and medical/leave, her gender (female) and her age.

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331, pursuant to **Title VII,**

the **ADA**, and the **FMLA**.

3. At all time material hereto the Defendant, **UNIVERSITY OF MIAMI** as a corporation licensed and doing business in Florida. The Defendant also has more than fifteen (15) employees.

4. The Plaintiff, **BUNGORNLUCK RODDA,** has exhausted her administrative remedies and otherwise complied with all conditions precedent to the filing of this action, including, the filing of her complaint with the Equal Employment Opportunity Commission (EEOC) on or about September 21, 2017 and December 20, 2017. (See attached copy of notice(s) Exhibit "A"). Plaintiff received a Notice of Dismissal and Notice of Rights containing the Plaintiff's right to sue within ninety days of receipt of said dismissal and notice of rights. (See Attached Exhibit "B").

5. This Court has jurisdiction, in Florida, over the Defendant as the Defendant is a corporation that conducts, operates and carries on business in the State of Florida as a corporation licensed and doing business in Florida and has committed unlawful acts in Florida and has conducted substantial, and not isolated activities within the State of Florida.

## ADA FACTUAL BACKGROUND

6. Plaintiff, **BUNGORNLUCK RODDA** was during her employment a 65 year old female and resident of Miami, Florida.

7. On July 9, 2007 Defendant hired Plaintiff for a administrative position based at the Coral Gables Campus, Florida.

8. The Plaintiff incorporates the EEOC Compliant attached as Exhibit "A" as if the allegations were stated herein and as they support her complaint.

*Disability*

9. During her employment at the Coral Gables campus the Plaintiff suffered from a severe

asthma, a respiratory illness that resulted in an impairment substantially limiting one or more of life's major activities, to wit breathing. The Plaintiff suffered continuing headaches, and short of breath that significantly limited her ability to perform all of her duties. With limited and reasonable accommodation, the Plaintiff could perform her job functions.

10. Defendant regarded Plaintiff as having an impairment, there is a record of impairment that substantially limited one or more of life's major activities which qualifies as a disability in accordance with the ADA. The employer recognized her disability, provided air purification, access to fresh air by allowing opening the unscreened windows, (which then exposed the Plaintiff to outside elements such as pesticide and fertilizers sprayed upon plants and grass, mosquitos, dust all which aggravated her medical condition.) The Defendant also allowed breaks for medical treatment.

11. Plaintiff suffered and continues to suffer from the aforementioned medical condition that qualifies as a disability in accordance with the ADA.

*Harassment*

12. Mr. Wright's harassed the Plaintiff during her absence, and after she returned to work. The harassment was in retaliation for complaining about discrimination and on the basis of her disability and for taking leave.

13. During February 27, 2017, the Plaintiff took leave. After the Plaintiff returned to work, other employees including the Department chair asked the Plaintiff why she had been absent, and it was apparent that the Plaintiff's supervisor, Robert Wright told everyone he didn't know why the Plaintiff was out and he didn't hear from the Plaintiff during her absence. This was not true and designed to make the Plaintiff look bad. The Plaintiff had in fact told

Robert Wright in advance that she would miss time and she told him where she was seeking treatment and recovering at home.

14. On March 6, 2017 the Plaintiff required treatment for her disability. The Plaintiff requested an accommodation for a private space to receive a self-administered aerosol treatment that took approximately 15- or 20-minutes during lunch break. The Plaintiff requested a that the treatment take place in a private room. Robert Wright refused to assign you a room. Instead the Plaintiff received an interrogation that lasted 30 minutes from Robert Wright and Maggie Pertierra (Dir. H.R.) about the disability, the medicines used and how she should have a better working relationship with her manager.

15. As a result of the failure to accommodate the Plaintiff was subjected to humiliation and embarrassment as the use of the aerosol treatment in public areas was subjected her to scrutiny by strangers who perceived this as treatment for a contagious disease.

16. On August 21, 2017 Plaintiff's supervisor Robert Wright manufactured a reprimand. He created a false allegation that the Plaintiff was sleeping on the job at her desk. Although overtime the names of the witnesses changed the basic charge was that the Plaintiff was asleep at her desk.

17. The allegation was false, and despite no written contemporaneous record of the event was made, Mr. Wright continued to push the false allegation even making up witnesses. It went so far that Mr. Wright eventually used witnesses Cody Ratcliff.

18. Dawn Reynolds condoned the behavior of Robert Wright. Dawn Reynolds was Robert Wrights supervisor and she and participated in the August 23, 2017 meeting when the Plaintiff was giving the verbal warning for the sleeping incident. Finally, on September 1, 2017 a written reprimand was issues using the false allegation.

19. Upon information and belief, Defendant had not reprimanded or questioned similarly situated employees for unexplained absences in their file.

20. On November 13, 2017, the Plaintiff's employment was terminated.

21. At termination the Plaintiff was told that her employee performance was good but that the position "administrative assistant" was being cut.

22. The reason given for her termination was false and a pretext.

23. Not only was her position kept but the tasks the Plaintiff performed were necessary and integral to the performance of all three departments in the building. For example, administrative support, communication support, scheduling, and events planning are basic functions of the position held by the Plaintiff at the time of her termination.

24. Defendant discriminated against and retaliated against Plaintiff on the basis of her disability, for requesting a reasonable accommodation, and for taking leave.

25. Defendant subjected Plaintiff to a hostile work environment on the basis of her disability.

26. Humiliated and upset by Defendant's employee, Robert Wright's comments and conduct, Plaintiff shortly thereafter wrote a complaint to the Defendant's Executive Director, Dawn Reynolds. The complaint about Defendant's discriminatory and retaliatory practices on the basis of her disability, request for a reasonable accommodation and FMLA leave.

27. Nothing was done to protect the Plaintiff or address the complaint.

28. Defendant retaliated against Plaintiff for engaging in a protected activity by making a complaint of discrimination and retaliation on the basis of her disability. For example Robert Wright would abuse the Plaintiff's position. Mr. Wright would assign tasks outside her pay grade, and when the Plaintiff would go to Robert Wright to request clarification on tasks, Mr.

Wright would tell her "you've done this before." This was confirmation that even though she was supposedly demoted 3 years before and no longer subject to those tasks, Robert Wright still wanted the Plaintiff to do the tasks for the old position "office Manager."

29. Defendant subjected Plaintiff to a hostile work environment on the basis of her disability and for making a complaint of discriminatory and retaliatory treatment for exercising her rights.

30. Defendant subjected Plaintiff to a hostile work environment up to the day of her termination.

31. For example on November 13, 2017 with no explanation as she returned from lunch the Plaintiff was subject to an unscheduled meeting with HR Director, Maggie Pertierra. This was done by Robert Wright and Maggie Pertierra. During the termination meeting, they interrogated the Plaintiff in a glass enclosed room visible to everyone in the that part of the building, including other employees, and so that she would be publicly embarrassed.

32. After the termination meeting Plaintiff was subject to Robert Wright hovering above her, he continued to embarrassed her by chastising the Plaintiff for attempting to clear her desk. This was done in front of another student worker.

33. The Defendant's reasoning for terminating Plaintiff were merely pretextual and instead for a more sinister motive, the Plaintiff's disability.

34. Plaintiff felt extremely degraded, victimized, humiliated, and emotionally distressed.

35. Defendant discriminated against and retaliated against Plaintiff for having complained of discrimination, as well as for having requested a reasonable accommodation under the ADA.

36. Defendant's discriminatory and retaliatory conduct was so unfair and extreme, that it caused severe emotional distress, aggravated anxiety/depression, both financial emotional harm

and the conduct was willful, intentional, and designed to and in fact did harm the Plaintiff.

37. Defendant's actions constituted a continuing violation under the applicable federal, laws.

38. The above are just some of the examples of the pattern and practice of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

## COUNT I: DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §§12101, ET SEQ. (1990)

Plaintiff, **BUNGORNLUCK RODDA**, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 38 as if set forth fully herein.

39. This is an action to recover all damages, interest, equitable relief and attorney's fees and costs on behalf of Plaintiff for violations of her federal rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101, *et seq.*, as amended to include the remedies in 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a.

40. Plaintiff is disabled within the meaning of 42 U.S.C. § 12101, *et seq.* (1990), as amended, in that she suffered from the medical conditions heretofore described, which impaired her breathing and substantially limited one or more of life's major activities. Additionally, Defendant regarded Plaintiff as having an impairment, and there was a record of an impairment, that substantially limited one or more of life's major activities.

41. Defendant is an employer within the meaning of 42 U.S.C. §12101, *et seq.*

42. At all times material hereto, Defendant was aware of Plaintiff's disability and failed to accommodate her reasonable accommodation requests to prevent the aggravation of her breathing issues, by exposing her to pesticides and chemicals at her work station.

43. As set forth in the Plaintiff's EEOC Complaint from September 21, 2017 she requested

an accommodation for a relocation of her workstation, that was denied capriciously.

44. The Plaintiff's disability was the motivating factor in the Defendant's decision to unlawfully discriminate against the Plaintiff based on her disability. As an example, the Defendant did not want to continue including allowing the Plaintiff to have a private space for taking aerosol treatments. Instead of accommodating Plaintiff's reasonable accommodation request based on her disability, Defendant failed to allow the accommodation and embarrassed her by having treatment in the public spaces.

45. Plaintiff could perform the essential functions of her position with reasonable accommodations and with some difficulty without accommodations. However, without accommodations her condition would degrade and she would need to take time off to recover.

46. Defendant discriminated against Plaintiff by wrongfully denying her requests for a reasonable accommodation, failing to train her, reprimanding her, and eventually terminating her employment using a pretext, that "….her position was cut."

47. The Plaintiff was terminated and all avenues of re-employment, transfer were shut out to the Plaintiff. In fact she was unable to find employment within the system on her own but when Human Resources discovered this fact she was told that "…the position was filled by a more qualified candidate", even though the person hired had not worked for the University before.

48. As early as December 2016 the Plaintiff questioned her supervisor about the basis for University rejecting her request for accommodation, by moving the Plaintiff to a safe location across the hall and in that conversation Robert Wright confirmed that the university was trying to drive her out of employment by making her so sick that she would resign on her own.

49. After the termination the Plaintiff learned that she had been blacklisted.

50. Plaintiff is protected against discrimination under the ADA.

51. Defendant's discrimination against Plaintiff was willful or with reckless indifference to her protected rights.

52. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

**WHEREFORE**, Plaintiff demands trial by jury, and requests this Court to:

    a.    Declare that Defendant unlawfully discriminated against Plaintiff in violation of the ADA;

    b.    Issue an order prohibiting further discrimination;

    c.    Order equitable relief, including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which she is entitled or award front pay in lieu of reinstatement, and all other equitable relief provided in 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a;

    d.    Award Plaintiff all compensatory and punitive damages provided for in 42 U.S.C. §1981a and applicable statutes; and

    e.    Award Plaintiff her costs, attorney's fees and such other relief as the Court deems proper.

## COUNT II: RETALIATION UNDER AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §§12101, ET SEQ. (1990)

Plaintiff, **BUNGORNLUCK RODDA**, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 38 as if set forth fully herein.

53. This is an action to recover all damages, interest, equitable relief and attorney's fees and costs on behalf of Plaintiff for violations of her federal rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101, *et seq.*, as amended to include the remedies in 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a.

54. Plaintiff is disabled within the meaning of 42 U.S.C. § 12101, *et seq.* (1990), as amended, in that she suffered from the medical conditions heretofore described, which impaired her brain, nervous and muscular systems and was substantially limited in one or more of life's major activities. Additionally, Defendant regarded Plaintiff as having an impairment, and there was a record of an impairment, that substantially limited one or more of life's major activities.

55. Defendant is an employer within the meaning of 42 U.S.C. §12101, *et seq.*

56. Following and as a result of Plaintiff's request for reasonable accommodation, Defendant retaliated against Plaintiff by instead reprimanding Plaintiff for taking time off, accusing Plaintiff of violating company policy, and unlawfully terminating Plaintiff's employment.

57. Robert Wright supervised at least 7 people, on or around March 7, 2017. During that time he would single the Plaintiff out, yell at the Plaintiff, and micromanaged her only, and not the other employees. The Plaintiff never witnessed Robert Wright yell at any other employee.

58. For example, the Plaintiff was preparing a document for a professor after Robert Wright assigned the task to the Plaintiff, Mr. Wright was passing the front desk where the Plaintiff worked and the Plaintiff asked Mr. Wright for clarification on an issue. Instead of providing direction or clarification Mr. Wright berated the Plaintiff loud enough for everyone to hear and embarrassed her in front the entire staff, and told her if she didn't know she should look it up in the computer and threatened her this would end up on her review. This humiliating behavior happened on more than ten times in 2017 alone.

59. Defendant failed to properly train Robert Wright and supervise him after the allegations of misconduct (yelling) surfaced.

60. Defendant's retaliation against Plaintiff was willful or with reckless indifference to her

protected rights.

61. The Plaintiff was terminated and all avenues of re-employment, transfer were shut out to the Plaintiff. In fact she was unable to find employment within the system on her own but when Human Resources discovered this fact she was told that "…the position was filled by a more qualified candidate", even though the person hired had not worked for the University before.

62. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

**WHEREFORE**, Plaintiff demands trial by jury, and requests this Court to:

    a.    Declare that Defendant, **UNIVERSITY OF MIAMI** unlawfully discriminated against Plaintiff in violation of the ADA;

    b.    Issue an order prohibiting further discrimination;

    c.    Order equitable relief, including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which she is entitled or award front pay in lieu of reinstatement, and all other equitable relief provided in 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a;

    d.    Award Plaintiff all compensatory and punitive damages provided for in 42 U.S.C. §1981a and applicable statutes; and

    e.    Award Plaintiff her costs, attorney's fees and such other relief as the Court deems proper.

### COUNT III: INTERFERENCE AND RETALIATION UNDER FAMILY AND MEDICAL LEAVE ACT – 29 U.S.C. § 2601 ET SEQ.

Plaintiff, **BUNGORNLUCK RODDA**, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 38 as if set forth fully herein.

63. Defendant, **UNIVERSITY OF MIAMI** employed 50 or more employees within a 75-

mile radius within 12 months before Defendant terminated Plaintiff and was required to comply with the FMLA.

64. Plaintiff was an eligible employee of Defendant pursuant to and within the meaning of 29 U.S.C. §2611(2), in that she worked for Defendant for at least 12 months and 1,250 hours during the previous 12-month period.

65. At all times relevant to this the facts alleged in this Complaint, Plaintiff suffered from one or more serious health conditions, which required her to miss work to receive medical treatment as she was entitled to do pursuant to the FMLA.

66. Plaintiff exercised or attempted to exercise her FMLA rights by requesting medical leave for one or more of her serious health conditions within the 12 months before her discharge.

67. Specifically during February 27, 2017, the Plaintiff suffered a sudden flare up of her respiratory illness that required leave. The Plaintiff notified her employer (including Robert Wright) and was granted medical leave. The leave lasted 4 days and 2 and 1/2 hours.

68. Defendant granted Plaintiff's request for FMLA for one or more serious health conditions. However, Defendant singled the Plaintiff out, and immediately after her return of Plaintiff's use of leave, exercising her rights, the Defendant, Robert Wright, reprimanded her harassed her and eventually terminated her using the pretext that her position was cut. All in retaliation for the Plaintiff exercising her right to medical leave.

69. Defendant therefore failed to cooperate with Plaintiff in her attempt to exercise her FMLA rights, and otherwise interfered with, restrained or denied Plaintiff's exercise of or the attempt to exercise her rights under the FMLA, in direct violation of 29 U.S.C. §2615 *et seq.*

70. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

71. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which she is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands trial by jury, and requests this Court to:

    a.    Enter a judgment that Defendant's termination of Plaintiff was in violation of the FMLA (29 U.S.C. §2615 *et seq.*;

    b.    Enjoin and permanently restrain Defendant from further violations of the FMLA;

    c.    Direct Defendant to reinstate Plaintiff with full seniority to an equivalent position, with back pay plus interest, pension rights and all benefits or, in the alternative enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A) against the Defendant and in favor of Plaintiff for the monetary losses she suffered as a direct result of Defendant's violation of the FMLA;

    d.    Enter a judgment pursuant to 29 U.S.C. §2617(a) against the Defendant and in favor of Plaintiff for all damages, including liquidated damages, interest, reasonable attorney's fees and costs incurred by Plaintiff for this action;

    e.    Award any additional relief to which she is entitled.

## FACTS FOR COUNTS COUNT IV GENDER DISCRIMINATION TITLE VII.

Plaintiff, **BUNGORNLUCK RODDA**, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 as if set forth fully herein.

72. Plaintiff brings this lawsuit seeking recovery against Defendant for Defendant's violations of Title VII of the 1964 Civil Rights Act, 78 Stat. 253, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") including Title VII's anti-retaliation provisions.

73. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this case is brought under Title VII of the 1964 Civil Rights Act, 78 Stat. 253, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").

74. The Plaintiff's supervisor, Robert Wright, commented on many occasions that he knew she was different from the other employees. The supervisor pointed out he was gay,

and he could sympathize with the Plaintiff and her differences.

75. The above are just some of the examples of the pattern and practice of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

76. The Plaintiff incorporates the EEOC Compliant attached as Exhibit "A" as if the allegations were stated herein and as they support my complaint.

## COUNT IV CLAIM FOR RELIEF DISCRIMINATION DUE TO GENDER IN VIOLATION OF TITLE VII

Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs numbered 1 -5 and 72 through 76, as if fully set forth herein..

77. Plaintiff is female.

78. The Plaintiff was replaced by a male employee.

79. Defendant, **UNIVERSITY OF MIAMI** through it's agents, engaged in a discriminatory practice in terms, conditions, and privileges of employment because of the gender of Plaintiff. Defendant discriminated against Plaintiff because of her gender by harassing Plaintiff and subjecting her to a hostile work environment.

80. Robert Wright supervised at least 7 people, on or around March 7, 2017 he would single the Plaintiff out, yell at her, and micromanaged her only not the other employees. The Plaintiff is aware of at least one other female who has been yelled at by the Plaintiff's supervisor Robert Wright. The Plaintiff has never witnessed Robert Wright yell at any other male employee and he treated the male employees with more respect.

81. For example, the Plaintiff was preparing a document for a professor, as she would do during her employment, and Robert Wright assigned the task to the Plaintiff, Mr. Wright was passing the front desk where the Plaintiff worked and the Plaintiff asked Mr. Wright for clarification on an issue. Instead of providing direction or clarification Mr. Wright berated

the Plaintiff loud enough for everyone to hear. This berating embarrassed the Plaintiff in front the entire staff. Mr. Wright told the Plaintiff if she didn't know she should look it up in the computer and he loudly threatened her this would end up on her review. This type humiliating behavior happened on more than ten occasions in 2017 alone.

82. To the extent that Defendant provided any avenue of complaint, Plaintiff reasonable availed herself of the company procedures Defendant provided to its employees.

83. The aforementioned actions of Defendant constitute an ongoing pattern and practice of gender discrimination and harassment.

85. The basis for the termination was a pretext designed to look like restructuring, however all avenues of transfer, or movement to other positions of University employment were shut out to the Plaintiff and she was prevented from interviewing for positions.

86. The Defendant, **UNIVERSITY OF MIAMI,** replaced the Plaintiff with a male white (Caucasian) employee with much less experience. The replacement required instruction on all levels of the administrative assistant position.

87. These acts violate Title VII and are illegal.

88. As a result of such conduct by Defendant, Plaintiff has suffered damages and in entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's unlawful conduct.

89. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights, due to which Plaintiff is entitled an award of punitive damages against Defendant.

**WHEREFORE,** Plaintiff demands trial by jury, and requests this Court to:

      a.      Declare that Defendant **UNIVERSITY OF MIAMI** unlawfully discriminated against Plaintiff in violation of the Title VII; and

      b.      Issue an order prohibiting further discrimination; and

      c.      Order equitable relief, including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which she is entitled or award front pay in lieu of reinstatement, and all other equitable relief provided at law;

      d.      Award Plaintiff all compensatory and punitive damages provided for in and

      e.      Award Plaintiff her costs, attorney's fees and such other relief as the Court deems proper.

## COUNT V CLAIM FOR RELIEF
## VIOLATION OF
### THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA)

Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs numbered 1 -5 , as if fully set forth herein.

90. Defendant, **UNIVERSITY OF MIAMI** through it agents, engaged in a discriminatory practice in terms, conditions, and privileges of employment because of the age of Plaintiff.

91. The Plaintiff was Sixty-Five at the time of her termination.

92. The Plaintiff was replaced by a younger employee. That employee Cody Ratcliff was an intern and had no experience in the position performed by the Plaintiff upon her termination.

93. The Plaintiff's supervisor, Robert Wright, would constantly single the Plaintiff out for her age, and stated, "….don't you remember anything? I am going to have to tell everyone that you don't remember anything." The Plaintiff was humiliated and embarrassed by the supervisor's conduct of yelling and berating the Plaintiff.

94. The Plaintiff incorporates the EEOC Compliant attached as Exhibit "A" as if the allegations were stated herein and as they support my complaint.

95. 29 US Code §623 of the **ADEA**, states that it shall be unlawful for an employer-

    (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

    (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

    (3) to reduce the wage rate of any employee in order to comply with this chapter.

96. Defendant, **UNIVERSITY OF MIAMI** discriminated against Plaintiff because of her age by harassing her and making her feel that she could not do her job trying to drive her from her position. Plaintiff suffered due to the hostile work environment. The Defendant did not give her merit pay increases due to Robert Wrights constant abuse and poor performance reviews.

97. To the extent that Defendant provided any avenue of complaint, Plaintiff availed herself of the company procedures Defendant provided to its employees.

98. The Plaintiff is aware of at least one other older employee who was driven from his position by demotion, cut in pay and eventually that employee resigned in protest.

99. The above are just some of the examples of the pattern and practice of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

100. The aforementioned actions of Defendant constitute an ongoing pattern and practice of age-based discrimination and harassment.

101. These acts violate the **ADEA** and are illegal.

102. As a result of such conduct by Defendant, Plaintiff has suffered damages and in entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's unlawful conduct.

103. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights, due to which Plaintiff is entitled an award of punitive damages against Defendant.

**WHEREFORE**, Plaintiff demands trial by jury, and requests this Court to:

    a. Declare that Defendant **UNIVERSITY OF MIAMI** unlawfully discriminated against Plaintiff in violation of the Title VII; and

    b. Issue an order prohibiting further discrimination; and

    c. Order equitable relief, including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which she is entitled or award front pay in lieu of reinstatement, and all other equitable relief provided at law;

    d. Award Plaintiff all compensatory and punitive damages; and

    e. Award Plaintiff her costs, attorney's fees and such other relief as the Court deems proper.

## CONCLUSION

**WHEREFORE,** the Plaintiff seeks the following relief:

1. Restoring the Plaintiff to her employment related benefits;
2. Awarding front pay as warranted under the circumstances of this case;
3. Awarding all unpaid wages and other entitlements consisting of damages in the form of back pay due to the Plaintiff; and front pay;
4. Awarding benefits, costs and reasonable attorneys' fees;
5. Compelling Plaintiff's reinstatement by Defendant to her former position of employment with **UNIVERSITY OF MIAMI**

6. Liquidated, Punitive and/or exemplary damages as order able pursuant to Statutes; and
7. Awarding the Plaintiff all the relief that this Court deems to be equitable and just.
8. Trial by jury on all issues so triable.

Respectfully submitted on 27 of December 2019.

**LAW OFFICES OF RICHARD J. CALDWELL, P.A.**
Attorneys for Plaintiff
66 West Flagler Street, Suite 601
Miami, Florida 33130
Tel: (305) 529-1040
Email: richard@caldwell.legal
caldwelllaw@bellsouth.net

By: _____
Richard J. Caldwell, Esq.
Florida Bar No. 825654