UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-25301-CIV-MORENO**

BUNGORNLUCK J. RODDA,

    Plaintiff,

vs.

UNIVERSITY OF MIAMI,

    Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment **(D.E. 47)**, filed on **May 3, 2021**.

THE COURT has considered the motion, the response, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **GRANTED.**

This is an employment discrimination case against the University of Miami. Plaintiff alleges three counts: 1) discrimination under the Americans with Disabilities Act, 2) retaliation under the Family and Medical Leave Act, and 3) age discrimination under the Age Discrimination in Employment Act. Defendant is granted summary judgment on all counts. Amidst other procedural and substantive defects, Plaintiff's statement of facts "admits or denies" facts rather than disputing them, is full of conclusory statements, and mainly relies on her own sworn declaration and other inadmissible hearsay. Ultimately, even if certain claims could survive as a matter of law, Plaintiff simply does not present evidence that could shoulder her burden of proving a prima facie case.

## I. Factual Background

Plaintiff, Bungornluck "Bonnie" Rodda, was a University of Miami employee from July 2007 to November 2017. She was an administrative assistant who primarily provided administrative and secretarial support. The University claims she was terminated due to departmental reorganization, while Rodda claims she was fired because she is disabled (asthma), in retaliation for taking FMLA leave, and because of her age (65). Plaintiff has filed two charges with the EEOC—one in 2014 and one in 2017. Defendant argues that Plaintiff's instant complaint includes conduct she complained about in the 2014 EEOC charge and thus is time-barred. Defendant also argues that the instant complaint contains allegations that were not included in her 2017 EEOC charge and thus Plaintiff is barred for suing over that conduct due to her failure to exhaust. However, there are, of course, disputes as to whether Plaintiff's federal court complaint is sufficiently similar to the 2014 EEOC charge to be time-barred and whether the 2017 EEOC charge was detailed enough to have exhausted certain claims. The Court will first lay out all the events and then discuss what was (or was not) in each EEOC charge as necessary.

In 2014, Plaintiff made a formal request for accommodation due to her asthma. She requested that her workspace be relocated, but after a collaborative process that specific request was denied because Plaintiff needed to remain at her desk's particular location to greet guests as part of her receptionist duties. Instead, the University gave her an air purification system, allowed her to open the window at her workspace, and allowed her to take fresh air breaks four times per day. Plaintiff was unhappy with these solutions and filed her 2014 EEOC charge alleging that the University failed to accommodate her disability. The EEOC issued a right to sue letter, but Rodda never sued. She made another formal request for relocation in 2015 (which was

denied) and a third in March 2016. At this point, the University offered her a transfer to a new building, but the Plaintiff denied the transfer, supposedly because the new building would not have been any better.

The complaint also alleges the University failed to accommodate Plaintiff's 2017 request for a private room in which to administer her medical treatment. However, it is a stretch to call it a "failure" on Defendant's part. Rodda and the University met to discuss the specifics of her request but as both parties attest, there was a breakdown in communication that led to hostility and Rodda eventually said she was "withdrawing my request for a place with privacy." Rodda *now* says she only wanted to withdraw from the meeting where she felt harassed, but there is no question she communicated in writing to the University and said "I withdraw my request for a place with privacy." Rodda never raised the private room request again. Rodda's 2017 EEOC charge mentions her request for a relocated workspace but does NOT mention her request for a private room.

Rodda took FMLA leave in 2014. However, that leave does not form the basis of her FMLA retaliation claim. Instead, Rodda also took time off from work in February 2017. Her complaint asserts this was FMLA leave, but her deposition testimony and the University's own records say otherwise. Rodda's February 2017 time off was just regular sick leave, *not* FMLA leave. Rodda's deposition reads as follows:

Q: Okay. Now, you've never filled out any paperwork to—to have this time treated as FMLA leave, did you?

A: I never requested FMLA. I requested medical sick leave.

Q: They were just regular sick days?

A: Yes.

3

On this record, the University could not have retaliated against Rodda for taking protected leave simply because she did not take protected leave.

Finally, Rodda, 65 years old at the time of her 2017 EEOC charge, alleges age discrimination. She describes comments made by her supervisor that ridicule her ability to remember things. Rodda claims she was replaced by a younger employee, but the University maintains her role was never filled—it was eliminated due to departmental reorganization and her responsibilities were split up among remaining employees. Rodda's only evidence for her claims is a sworn declaration that she "knows" certain employees worked for the University doing similar tasks after she was fired. Plaintiff made no mention of the specifics of her age discrimination claim her in EEOC charge—she merely mentioned her age and checked the "age discrimination" box at the top of the form.

## II.  Legal Standard

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251 (1986). The

4

moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

A non-conclusory affidavit based on personal knowledge, even if uncorroborated and self-serving, can create a genuine dispute of material fact that defeats summary judgment. *United States v. Stein*, 881 F.3d 853, 857-59 (11th Cir. 2018). But a conclusory affidavit will not defeat summary judgment. *Id.* at 857. The word "conclusory" may be defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, Black's Law Dictionary (11th ed. 2019). Conclusory allegations without specific supporting facts have no probative value. *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013). Affidavits based upon information and belief, rather than personal knowledge, are also insufficient to withstand a motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005).

### III. Analysis

All of Plaintiff's claims have procedural issues such as time-bar, exhaustion, or statute of limitations, but Plaintiff also completely lacks evidence for her claims. For example, the only evidence she offers in support of her age discrimination claim is her own sworn declaration which itself is mainly conclusory statements without a basis in personal knowledge. To support her FMLA retaliation claims, she offers only the sworn declaration of a former University employee who was fired before the events in this case took place and does not provide the basis for her knowledge.

A. ADA Discrimination

Count I of Plaintiff's complaint, ADA discrimination, impermissibly contains several theories of harm under one count. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (cataloguing the various types of shotgun pleadings). Plaintiff alleges failures to accommodate, hostile work environment, and that she was fired because of her disability. While the summary judgment briefing from both parties focuses on the failure to accommodate claim, for the sake of completeness, the Court will address all of Count I's theories.

1. Failure to Accommodate

As mentioned above, Plaintiff made two requests for accommodation. One was for a private room to administer medical treatment and the other was for a relocated workstation. An employee alleging a violation of Title I of the American with Disabilities Act must exhaust her administrative remedies before filing suit. *Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336 (11th Cir. 2017). "The first step down th[e] path [to exhaustion] is filing a timely charge of discrimination with the [Commission]." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The Eleventh Circuit Court of Appeals has squarely held that a plaintiff's "judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir. 1985). "Absent some allegation of fact sufficient to put the defendant on notice of the nature and scope of the claim against it, the plaintiff is barred from asserting other types of claims in subsequent judicial proceedings that may bear some connection, however distinct, to the bare claim asserted in the EEOC charge." *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1365 (S.D. Fla.), *aff'd sub nom. Gaston v. Home Depo USA, Inc.*, 265 F.3d 1066 (11th Cir. 2001).

Put simply, the Plaintiff's 2017 EEOC charge does not mention a request for a private room for medical treatment. In her response, Plaintiff points to the fact that the University's response to the EEOC investigation mentions the private room request. Not only is this irrelevant to whether the 2017 EEOC charge was sufficient to notify the Defendant of Plaintiff's claims, but the University only mentioned the private room request to note that Plaintiff affirmatively withdrew that request before even filing the 2017 EEOC charge. The Supreme Court and Eleventh Circuit have made it clear that each discrete act of discrimination should be treated separately and that "each discrete discriminatory act starts a new clock for filing an EEOC charge alleging that act . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015). Because the 2017 EEOC charge does not mention Plaintiff's request for a private room in which to administer medical treatment, it was not properly exhausted and cannot be raised now. Even if the claim were properly exhausted, it is clear from the evidence that the Plaintiff withdrew her request before it was actually rejected by Defendant.

Defendant argues that Plaintiff's other failure to accommodate claim—her request for a relocated workstation—is time-barred. Once the EEOC dismisses a charge and notifies the plaintiff of her right to sue, the plaintiff has 90 days in which to file suit on her claims in district court. 42 U.S.C. § 2000e–5(f)(1); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000). Prior to the summary judgment briefing, it was difficult to tell whether the failure to accommodate a relocated workstation described in the 2017 EEOC charge was the same failure to accommodate a relocated workstation as in the 2014 EEOC charge. It is now clear that the Plaintiff made three separate, albeit identical, requests for her workstation to be relocated. Even though the requests were identical to those previously made (and dismissed by the EEOC), the

Court is unaware of any case law holding that if the original request is time-barred, so, too, is the subsequent, separate request. In fact, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. Even though the "unlawful employment practice" is the substantively identical to the time-barred one, *i.e.*, they both deny a request for a relocated workstation, the latter request kicked off a *separate* interactive process and ultimately resulted in a *separate* denial of Plaintiff's request. Thus, the Court addresses the merits of Plaintiff's claim.

To establish her *prima facie* case of disability discrimination, Plaintiff must show that "(1) she has a disability; (2) she is otherwise qualified for the position; and (3) she was subjected to unlawful discrimination as the result of her disability." *Dickerson v. Sec'y, Dept. of Veterans Affairs Agency*, 489 F. Appx. 358, 360 (11th Cir. 2012) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999)).

Plaintiff adduces absolutely no evidence (outside of her own declarations) that would help her carry her burden of proving she is qualified or was discriminated against because of her disability. An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability—unless doing so would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a). An accommodation can qualify as "reasonable," and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job. *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998). The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997).

8

"Thus, if [the plaintiff] is unable to perform an essential function of his ... job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Davis v. Fla. Power & Light Co.,* 205 F.3d 1301, 1305 (11th Cir. 2000).

Nowhere in the Plaintiff's complaint nor her summary judgment briefing nor her skeletal factual evidence is there a mention of how she will be able to perform the job's essential functions after a hypothetical relocation. On the other hand, Defendant produces evidence from Plaintiff's supervisors as well as University HR personnel that shows Plaintiff's receptionist duties could *not* be performed elsewhere. Specifically, Plaintiff needed to be in the building lobby where she could greet visitors and direct traffic. As further evidence of the University's good faith and willingness to accommodate, the University even offered to move the Plaintiff into an entirely new position where she could have worked in a new location while still performing her essential duties. Plaintiff rejected that offer, supposedly because that building was also "sick," but she offers no proof of that, either. At bottom, Plaintiff fails to bear her burden of demonstrating that her chosen accommodation would allow her to continue the essential functions of her job, and thus fails to make a prima facie case that she is a "qualified individual" under the ADA. There exists no genuine issue of material fact and summary judgment is granted to the Defendant on Rodda's failure to accommodate claim.[1]

2. Hostile Work Environment

Plaintiff does not specifically style her claim as a hostile work environment claim under the ADA, nor does she mention the theory in her summary judgment briefing. Additionally, the Eleventh Circuit has not explicitly recognized a hostile work environment claim theory under the

---

[1] If Plaintiff also pled a general disability discrimination claim, i.e., that she was fired because of her asthma, the Court should also grant summary judgment to Defendant on the same grounds—Plaintiff has not shown that she is a "qualified individual" covered by the ADA.

9

ADA. *Cooper v. CLP Corp.*, 679 F. App'x 851, 852-53 (11th Cir. 2017). District Courts within the Eleventh Circuit have recognized such claims, however, and the Court addresses the merits of Rodda's claim without formally deciding that such a claim exists.

To prove a prima facie case of hostile work environment under the ADA, Rodda must establish that: (1) she belongs to a protected group (i.e., she is disabled under the ADA); (2) she was subjected to unwelcome harassment; (3) the harassment to which she was subjected was based on a disability; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the University knew or should have known of the harassment, but failed to take prompt, remedial action. *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347 (S.D. Fla. 1999). Additionally, to be actionable, the harassment must be so severe and pervasive as to "ha[ve] the purpose or effect of unreasonably interfering with [Rodda's] work performance or creating an intimidating, hostile, or offensive environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986); *see also Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

Once again, beyond the vague, conclusory allegations in her complaint, Plaintiff provides no evidence—no witnesses, no threatening emails, no therapist notes, no other employees who made similar claims—that she was harassed, let alone harassed on the basis of her disability. She claims that her supervisor fabricated an allegation that she was asleep on the job (she claims she was "closing her eyes"), that her supervisor made derogatory comments about her memory (even if true, these comments were not based on her asthma disability), and that her supervisor set up a meeting with HR in a visible glass room (according to the evidence, the purpose of the meeting was to accommodate Rodda's requests—not to mention glass conference rooms are a common feature of today's office floor plan). Even if Rodda provided the Court with evidence that these things actually happened and that they happened due to her disability, they would be insufficient

10

to meet the high standard for what qualifies as a "hostile" work environment. The demanding standards for judging abusive working environments were designed to prevent civil rights statutes from becoming "general civility code[s]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). These standards help "filter out complaints attacking 'ordinary tribulations of the workplace.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, (1998) (internal citation omitted). For these reasons, Defendant is granted summary judgment on the hostile work environment claim.

B. FMLA Retaliation

Count II alleges that Plaintiff was fired in retaliation for taking FMLA leave. Two problems: First, Plaintiff did not take FMLA leave any time near her termination and second, her claim is barred by the statute of limitations.

The FMLA requires a plaintiff to file suit "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C § 2617(c)(1). Here, Plaintiff alleges that she was "reprimanded . . . and eventually terminated" in retaliation for "exercising her right to medical leave." Thus, the "last event constituting the alleged [FMLA] violation" occurred when she was laid off on November 13, 2017, meaning that she needed to file suit on or before November 13, 2019 – two years from the date of her layoff. *See* 29 U.S.C § 2617(c)(1). Plaintiff filed her initial Complaint on December 27, 2019, forty-five days after the statute of limitations had run. Thus, Plaintiff's FMLA retaliation claim is barred by the statute of limitations. *See Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1373 (S.D. Fla. 2015), *aff'd sub nom. Liu v. Univ. of Miami Sch. of Med.*, 693 F. Appx. 793 (11th Cir. 2017).

Plaintiff contends that the *three-year* statute of limitations for intentional violations of the FMLA should apply. 29 U.S.C. § 2617(c)(2). She claims a jury could find that the University

11

had a "practice/unofficial policy" of intentionally violating the FMLA based on the sworn declaration of Corlis Robinson. Putting aside the fact that Plaintiff did not allege a pattern or practice theory in her complaint, her sole reliance on Robinson's declaration is woefully insufficient to survive summary judgment. Robinson is essentially a surprise witness—something more suitable for Law & Order than federal court. She was not disclosed in Plaintiff's initial disclosures nor in response to the University's interrogatories regarding persons with knowledge. When her allegations were mentioned at Plaintiff's deposition and Defense counsel inquired as to the source of those allegations, Plaintiff repeatedly said that she "was not at liberty" to disclose Robinson's identity. Robinson's name only came to light after the close of discovery. But even further, the contents of the Robinson declaration are unhelpful to Plaintiff's case. In support of her sweeping, conclusory allegation that Defendant had a policy of intimidating and firing employees who made complaints, she says "I know the names and dates of many employees who suffered as a result of this practice and unofficial policy. This practice and unofficial policy was used since at least 1982," but nothing more. Because "one cannot oppose summary judgment with a self-serving, conclusory affidavit that fails to set forth specific facts to show why there is an issue for trial, and fails to demonstrate that the facts presented in the affidavit are based on personal knowledge beyond mere speculation or belief,"[2] the two-year statute of limitations applies and summary judgment is appropriate for Defendant on Plaintiff's FMLA Retaliation claims.

C. Age Discrimination

Finally, Count III alleges age discrimination in violation of the Age Discrimination in Employment Act. Summary judgment should also be awarded to Defendant on this claim. First,

---

[2] *Smith v. Young*, Case No. 4:11-cv-573-RH/CAS, 2013 WL 1729000, (N.D. Fla. Mar. 6, 2013) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).

12

it is likely Plaintiff again failed to exhaust her age discrimination claim. Judicial claims under the ADEA are subject to the same administrative exhaustion requirement as claims under the ADA. *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004). To reiterate, the purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983). Rodda's 2017 EEOC charge checks the age discrimination box at the top of the form and conclusorily states "I further allege that I have been discriminated against because of my age (65) in violation of the Age Discrimination in Employment Act." There are no other details about the form of discrimination Plaintiff experienced. The Court has serious doubts that this suffices to exhaust Plaintiff's administrative remedies. However, to be thorough, the Court addresses the merits of the age discrimination claim.

Where, as here, an employee was laid off during a reorganization or "reduction in force," she must establish the following elements to make out a *prima facie* case: (1) she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). This is the proper standard because Plaintiff does not effectively refute that this is indeed a reduction in force case. Her only evidence that she was *replaced* is her sworn declaration stating "the Plaintiff is aware of another employee hired after being terminated in 2017, her name was Iliana Grana. She was rehired in January 2020." She makes similar declarations with respect to Cody Ratliff and Janine Garcia. Plaintiff does not tell the Court *how*

13

she knows this, does not submit any documents from human resources to support the claim that these people work at the University, or point to any deposition testimony from University employees that would contradict their testimony that Plaintiff's responsibilities were simply split among the remaining employees.

Using this standard then, there is no evidence that the jury could use to find that the University *intended* to discriminate against Rodda on the basis of her age. The only relevant allegations are that Plaintiff's supervisor made comments about her memory and that the University hired other workers after Rodda was let go. As noted above, there is a complete dearth of evidence when it comes to these other employees. Further, Plaintiff provides no corroborating evidence regarding her superior's comments. But even if the Court were to take her word for it and find that these comments were indeed made, stray comments about the Plaintiff's memory are not direct evidence of age discrimination. At best, they are circumstantial evidence, which is evaluated using the *McDonnell Douglas* framework. *Jameson*, 75 F.3d at 1531. "[A] plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). Rodda has no evidence by which a jury could conclude that she and her proffered comparators were similarity situated in all respects, and thus no evidence by which a jury could conclude the University intended to discriminate. Summary judgment is granted for Defendant.

**IV.     Conclusion**

Defendant's summary judgment motion is granted for all of Plaintiff's counts.

DONE AND ORDERED in Chambers at Miami, Florida, this \_\_\_4th\_\_\_ of June 2021.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record